**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| ICONTROL NETWORKS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:13-cv-834-LMB/IDD |
| | ) | |
| v. | ) | |
| | ) | |
| ALARM.COM INCORPORATED; | ) | **JURY TRIAL DEMANDED** |
| FRONTPOINT SECURITY SOLUTIONS, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**PLAINTIFF ICONTROL NETWORKS, INC.'S OPPOSITION TO DEFENDANT
FRONTPOINT SECURITY SOLUTIONS, LLC'S MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

STATEMENT OF RELEVANT FACTS ............................................................................2

STATEMENT OF LAW .....................................................................................................5

ARGUMENT .......................................................................................................................6

I.     iControl Has Properly Pled Direct Infringement ....................................................6

II.    iControl Has Properly Pled Induced Infringement .................................................8

      A.   iControl has Sufficiently Pled that FrontPoint had Knowledge of the Patents-in-Suit ....................................................................................................8

      B.   iControl has Sufficiently Pled that FrontPoint was Willfully Blind to the Patents-in-Suit .........................................................................................10

      C.   iControl has Properly Alleged that FrontPoint Intended to Cause Infringement ................................................................................................10

III.   iControl Has Properly Pled Contributory Infringement .......................................12

IV.    iControl Has Properly Pled Willful Infringement ................................................15

V.     Leave to Amend .....................................................................................................16

CONCLUSION ..................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allergan, Inc. v. Alcon Laboratories, Inc.*
  324 F.3d 1332 (Fed. Cir. 2003) ........................................................................................9

*Ameranth, Inc. v. Menusoft Sys. Corp.*
  Case No. 2:07-CV-271-TJW-CE, 2010 U.S. Dist. LEXIS 94852 (E.D. Tex.
  August 23, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 94821
  (E.D. Tex. September 13, 2010) ...............................................................................14, 15

*Anderson v. Greene*
  Case No. 05-0393-WS, 2005 U.S. Dist. LEXIS 38684 (S.D. Ala. 2005) ........................13

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...................................................................................................5, 11

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................................................5, 12

*Broadcom Corp. v. Qualcomm, Inc.*
  543 F.3d 683 (Fed. Cir. 2008) .......................................................................................11

*Driessen v. Sony Music Entm't*
  Case No. 2:09-CV-0140-CW, 2013 U.S. Dist. LEXIS 120309 (D. Utah Aug. 22,
  2013) ..........................................................................................................................14

*DSU Med. Corp. v. JMS Co.*
  471 F.3d 1293 (Fed. Cir. 2005) .....................................................................................12

*Erickson v. Pardus*
  551 U.S. 89 (2007) .................................................................................................11, 12

*Fayetteville Investors v. Commercial Builders, Inc.*
  936 F.2d 1462 (4th Cir. 1991) .........................................................................................6

*Fina Research, S.A. v. Baroid Ltd.*
  141 F.3d 1479 (Fed. Cir. 1998) .......................................................................................9

*Fujitsu Ltd. v. Netgear Inc.*
  620 F.3d 1321 (Fed. Cir. 2010) .....................................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*
  131 S.Ct. 2060 (2011) ...................................................................................................10

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*
  909 F.2d 1464 (Fed. Cir. 1990)......................................................................13

*Hishon v. Spalding*
  467 U.S. 69 (1984).....................................................................................5, 8

*In re Bill of Lading Transmission Processing and Sys. Patent Litig.*
  681 F.3d 1323 (Fed. Cir. 2012)................................................................ *passim*

*Intellect Wireless Inc. v. Sharp Corp.*
  Case No. 10 C 6763 2012 U.S. Dist. LEXIS 31669 (N.D. Ill. March 9, 2012)..................9

*K-Tech. Telecomms., Inc. v. Time Warner Cable, Inc.*
  714 F.3d 1277 (Fed. Cir. 2013)....................................................................6, 7

*Lucent Technologies, Inv. v. Gateway, Inc.*
  580 F.3d 1301 (Fed. Cir. 2009)......................................................................15

*McZeal v. Sprint Nextel Corp.*
  501 F.3d 1354 (Fed. Cir. 2007)...................................................................6, 16

*Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*
  Case No. 09-C-948, 2011 WL 665439 (E.D. Wis. February 14, 2011) ....................15, 16

*Nielson Co. v. comScore, Inc.*
  819 F.Supp.2d 589 (E.D. Va. 2011) ..................................................................6

*Nieves ex rel. Nieves v. Univ. of P.R.*
  7 F.3d 270 (1st Cir. 1993)............................................................................13

*Oracle Corp. v. DrugLogic, Inc.*
  807 F.Supp.2d 885 (N.D. Cal. 2011) ................................................................15

*Rembrandt Social Media L.P. v. Facebook, Inc.*
  Case No. 13-CV-138, 2013 U.S. Dist. LEXIS 84245 (E.D. Va. June 12, 2013)................8

*Ricoh Co. v. Quanta Comp., Inc.*
  Case No. 06-CV-462-BBC , 2010 U.S. Dist. LEXIS 27301 (W.D. Wis. 2010) ..............14

*Skinner v. Switzer*
  131 S. Ct. 1289 (2011)..................................................................................5

*Tarkus Imaging, Inc. v. Adobe Sys.*
  Case No. 10-63-LPS, 2012 U.S. Dist. LEXIS 82477 (D. Del. 2012)............................10

*W.L. Gore & Assocs. v. Medtronic, Inc.*
  778 F.Supp.2d 667 (E.D. Va. 2011) ..................................................................6

*Walker Digital, LLC v. Facebook, Inc.*
      852 F.Supp.2d 559 (D. Del. 2012)......................................................................................9

**Rules**

Fed. R. Civ. P. 84 .................................................................................................................................6

**INTRODUCTION**

Plaintiff iControl Networks, Inc. ("iControl") submits this memorandum in opposition to Defendant FrontPoint Security Solutions LLC's ("FrontPoint") motion to dismiss for failure to state a claim upon which relief can be granted with respect to iControl's Amended Complaint. As summarized below, FrontPoint's motion fails:

*Direct Infringement* – FrontPoint's argument is premised on a misunderstanding of patent law. The fact that Alarm.com supplies FrontPoint with certain components that, when combined with other components, create an infringing system does not immunize FrontPoint from liability for direct patent infringement. The determinative question is whether iControl has alleged that FrontPoint makes, uses, sells, offers to sell, and/or imports an infringing system. iControl has so alleged and, in accordance with the parties' Joint Discovery Plan, provided FrontPoint with hundreds of pages of detailed claim charts to substantiate these allegations.

*Indirect Infringement* – FrontPoint argues that iControl failed to plead the "knowledge" requirement of induced infringement. As a matter of law, FrontPoint's allegations fail because (as recognized by federal courts throughout the country) post-lawsuit knowledge is sufficient to support the knowledge element of indirect patent infringement. But even accepting its legally erroneous proposition, FrontPoint's argument still fails because iControl does allege that FrontPoint knew of the patents before this lawsuit. FrontPoint may disagree with iControl's factual allegations, but mere disagreement is irrelevant for purposes of a motion to dismiss.

*Willful Infringement* – FrontPoint also seeks dismissal of iControl's allegations of willful infringement. iControl's willful infringement allegations are spelled-out in more than ten paragraphs of detailed allegations. This satisfies the pleading standards for willful infringement as recognized by the Federal Circuit and other district courts.

-1-

## STATEMENT OF RELEVANT FACTS

iControl is a pioneer and innovator in the home management industry, including interactive home security, home monitoring, home management and control, and energy management.

In 2007, two of FrontPoint's founders, Chris Villar and Peter Rogers, approached iControl representing their interest in licensing the iControl technology. In May of 2007, FrontPoint visited iControl's offices in Palo Alto, CA. At iControl, FrontPoint entered into a mutual Non-Disclosure Agreement with iControl and was then introduced to iControl's proprietary technology. At the time of the meeting, iControl had filed patent applications covering this technology. In a series of technical and business discussions, iControl educated Mr. Villar and Mr. Rogers on iControl's product roadmap and technology, including how iControl had added Z-Wave technology (including lighting, thermostats, and appliance control) to traditional security systems. iControl demonstrated the use of mobile and web-based clients in the iControl system, specifically for use in controlling Z-Wave devices, including lighting, appliances, and thermostats and Wi-Fi cameras for live video and event-based photos. (*See* iControl Am. Comp. at ¶ 12).

On May 31, 2007, iControl then provided an evaluation system to Mr. Villar to help him understand the more detailed operation of the iControl system, in particular its integration with the GE Simon, its video management capabilities, remote access from mobile phone devices, and the utilization of its Z-Wave local area network. iControl's evaluation system embodied the technology described in iControl's then pending patent applications. (*See* iControl Am. Comp. at ¶ 13).

On July 6, 2007, iControl provided a detailed demonstration of the server management tools and infrastructure. During this demonstration, FrontPoint was exposed to iControl's proprietary tools and architecture, which were described in iControl's then pending patent application. iControl also introduced FrontPoint to the new interactive touchscreen that iControl was developing with GE Security. In November of 2007, FrontPoint indicated that it intended to go forward with Alarm.com for basic wireless security functionality and that it was interested in working with iControl later, particularly when the new touchscreen technology was integrated into a GE Security Panel. (*See* iControl Am. Comp. at ¶¶ 14–16).

According to FrontPoint's website, "FrontPoint partnered with Alarm.com to provide the wireless cellular technology included in every FrontPoint alarm system." The website further states, "FrontPoint is the only home security provider named Alarm.com's Preferred Dealer for Easy Installation. FrontPoint is also the only Alarm.com dealer operating in all 50 states." (*See* iControl Am. Comp. at ¶ 17).

iControl has alleged that Alarm.com's business focus has been the delivery of wireless and web-enabled security and activity monitoring technology for residential and commercial customers. Alarm.com has also launched video monitoring products and mobile applications, enabling a consumer to remotely control video cameras and alarm systems from a mobile phone. Alarm has also launched EmPower, a home management product that integrates the Z-Wave local area networking technology with the Alarm.com radio module, allowing users to "remotely monitor and change their thermostat settings" and "lock and unlock doors, even when remote." (*See* iControl Am. Comp. at ¶¶ 18–20).

iControl has brought a claim for infringement of U.S. Patent No. 7,262,690; U.S. Patent No. 7,911,341; U.S. Patent No. 8,073,931; U.S. Patent No. 8,335,842; U.S. Patent No. 8,473,619; and U.S. Patent No. 8,478,844 (collectively, the "Patents-in-Suit").

iControl has alleged that FrontPoint has infringed its patents, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States products and services for monitoring and controlling security systems. These infringing products and services include at least the technology identified on FrontPoint's website related to interactive security systems (e.g., the Interactive Security and Home Automation products and services). iControl has identified an exemplary infringing system as FrontPoint's security system, which includes a home security panel (such as the GE Simon XT panel), alarm sensors and/or Z-Wave devices, and a remote server with Alarm.com's monitoring software. iControl has further alleged that FrontPoint uses, makes, offers to sell, and sells this infringing system, among other infringing acts such as installing the security system in homes of customers. As a result, the pleadings clearly state that in addition to FrontPoint, FrontPoint's customers that use the FrontPoint security system are also direct infringers. (*See* iControl Am. Comp. ¶¶ 23, 30, 36, 43, 50, 57).

iControl has also alleged that FrontPoint has committed acts of contributory infringement, induced infringement, and willful infringement. In furtherance of these claims, iControl has included allegations that FrontPoint had knowledge of the patents-in-suit and has continued its conduct and facilitating its customers conduct in willful disregard of iControl's patent rights. (*See* iControl Am. Comp. ¶¶ 24-26, 31-33, 37-39, 44-46, 51-53, 58-60).

iControl's complaint also alleged infringement as to Alarm.com. Alarm.com conceded the sufficiency of iControl's complaint by answering the complaint. Alarm.com has never complained about the level of detail contained in iControl's complaint.

On October 4, 2013, iControl served its initial infringement contentions on FrontPoint. These contentions identified each asserted claim and included claim charts (totaling 326 pages) comparing specific functionality of Frontpoint's infringing security system to each asserted claim. FrontPoint has never complained about the sufficiency of these claim charts.

## STATEMENT OF LAW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint "generally requires only a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "does not need detailed factual allegations," but simply facts that, when taken as true, "state a claim to relief that is plausible on its face." *Id.* The standard under Rule 8(a)(2) is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court is required to construe the complaint in the light most favorable to the plaintiff and accept all the facts alleged by the plaintiff as true. *See Hishon v. Spalding*, 467 U.S. 69, 73 (1984). Because of their *res judicata* effect, Rule 12(b)(6) motions to dismiss are to be viewed with disfavor in the Fourth Circuit. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).

On a motion to dismiss, the Court applies the regional circuit law, in this case, the Fourth Circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007) ("A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law. Thus, on review, we apply the law of the regional circuit."). In the absence of a post-*Twombly*/*Iqbal* decision by the Fourth Circuit Court of Appeals on a Rule 12(b)(6) motion to dismiss in a patent case, other courts in the Fourth Circuit have relied on the Federal Circuit's decision in *McZeal* when considering motions to dismiss in patent cases. *Nielson Co. v. comScore, Inc.*, 819 F.Supp.2d 589, 592 (E.D. Va. 2011). Under *McZeal*, a plaintiff alleging patent infringement "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357.

## ARGUMENT

### I.    iControl Has Properly Pled Direct Infringement

"[A] litigant who complies with the provisions of Form 18 has sufficiently stated a claim for direct infringement as contemplated by Rule 12(b)(6)." *W.L. Gore & Assocs. v. Medtronic, Inc.*, 778 F.Supp.2d 667, 675 (E.D. Va. 2011); s*ee also* Fed. R. Civ. P. 84 ("The forms in the Appendix suffice under the rules and illustrate the simplicity and brevity that these rules contemplate."); *K-Tech. Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) ("Rule 84, combined with guidance from the Advisory Committee Notes to the 1946 amendment of Rule 84, makes clear that a proper use of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding the sufficiency of the pleading.").[1]

---

[1] That standard was not altered by *Twombly* or *Iqbal*. *See In re Bill of Lading*, 681 F.3d at 1349–50 (finding that *Twombly* and *Iqbal* have not affected the adequacy of Form 18 for all allegations of direct

FrontPoint argues that iControl "fails to specify which Defendant performs which step or provides which products or services . . . ." (FrontPoint Mot. To Dismiss at 8).   FrontPoint is factually incorrect regarding what is disclosed in iControl's complaint. iControl's complaint identifies specific exemplary infringing products that are sold and/or installed by FrontPoint. (iControl Am. Comp. at ¶ 23). This identification is entirely consistent with and goes beyond the requirements of Form 18, which sets forth "electric motors" as an example of an allegedly infringing product that is sufficiently pled. Fed. R. Civ. P. App'x, Form 18. Form 18 does not identify specific models or the specific claims that are infringed, as these may be readily ascertained through discovery.

The Federal Circuit, under similar circumstances, found that Form 18's requirements and the interpreting case law were satisfied where the defendants "knew what [plaintiff's] patents claimed, and they knew what [plaintiff] asserted their systems do, and why." *K-Tech*, 714 F.3d at 1287. Supporting this conclusion, the Court noted that the "touchstones of an appropriate analysis are notice and facial plausibility," and that "[w]hile these requirements serve as a bar against frivolous pleading, it is not an extraordinarily high one." *Id.* at 1286. Here, iControl's Amended Complaint clearly exceeds this standard by providing FrontPoint with specific allegations concerning the infringing products and services and why such products and services infringe.

Furthermore, FrontPoint's asserted deficiencies are rendered moot by the detailed preliminary infringement contentions that were provided to FrontPoint on October 4, 2013. These contentions identify specific infringing products and components that are provided by

---

patent infringement and to hold otherwise would render Rule 84 and Form 18 invalid); *see also McZeal*, 501 F.3d at 1356–57.

FrontPoint to its customers, including end-users. Additionally, these preliminary infringement contentions provide claim charts that disclose an element-by-element comparison of iControl's asserted claims to accused products.

FrontPoint further denies—in the form of attorney argument— that it cannot infringe the patents-in-suit because FrontPoint does not provide the entire infringing system. (*See* Mot. at 8). For the purposes of a motion to dismiss, however, the Court must accept all facts alleged by plaintiff as true. *See Hishon*, 467 U.S. at 73. Contrary to FrontPoint's assertions, iControl *has* alleged that FrontPoint provides an entire infringing system. For example, iControl's complaint alleges that "[a]n exemplary infringing system is FrontPoint's security system . . . . On information and belief, Defendants use, make, offer to sell, and sell this infringing system . . . ." (iControl Am. Comp. at ¶¶ 23, 30, 36, 43, 50, 57). In light of the foregoing, it is clear that iControl has adequately pled its claims of direct infringement.

## II.    iControl Has Properly Pled Induced Infringement

### A.    iControl has Sufficiently Pled that FrontPoint had Knowledge of the Patents-in-Suit

FrontPoint attacks iControl's Amended Complaint on the grounds that "iControl entirely fails to plead any facts that would support its assertion that FrontPoint had pre-suit knowledge of the Patents-in-Suit." (Mot. at 11).  FrontPoint is wrong both as to the law and the facts.

As to the law, federal courts throughout the country have held (1) that plaintiffs are entitled to bring patent infringement claims to adjudicate further acts of induced infringement and (2) that Article III standing is satisfied by notice of the patent at the time of the filing. *See Rembrandt Social Media L.P. v. Facebook, Inc.*, Case No. 13-CV-138, 2013 U.S. Dist. LEXIS 84245 at *14 (E.D. Va. June 12, 2013) (finding post-filing knowledge of the asserted patents to

be sufficient for purposes of satisfying the knowledge requirement of indirect infringement);
*Walker Digital, LLC v. Facebook, Inc.*, 852 F.Supp.2d 559, 565 (D. Del. 2012) ("[T]here is no
legal impediment to having an indirect infringement cause of action limited to post-litigation
conduct."); *Allergan, Inc. v. Alcon Laboratories, Inc.*, 324 F.3d 1332, 1332 (Fed. Cir. 2003)
(ruling that a "claim of induced infringement under section 271(e)(2), filed prior to the
occurrence of direct infringement, does not violate the case or controversy requirement of Article
III"); *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1485 (Fed. Cir. 1998) ("[W]e
decline . . . to create a per se rule that an actual controversy predicated only on induced
infringement may exist only if direct infringement has already occurred."); *Intellect Wireless Inc.
v. Sharp Corp.*, Case No. 10 C 6763 2012 U.S. Dist. LEXIS 31669 (N.D. Ill. March 9, 2012).

iControl is not, therefore, required to solely plead induced infringement based on
FrontPoint's past conduct, but can also bring a claim based on FrontPoint's conduct during
litigation or after this litigation has been completed.

Even if pre-lawsuit knowledge of the patents-in-suit were required—which it is not—
FrontPoint's arguments still fail.  This is because iControl alleges pre-lawsuit knowledge as to
each patent-in-suit.   iControl's Amended Complaint states:   "as discussed in ¶¶ 11–
20 . . . Defendants had substantial knowledge of iControl's technology and its products
embodying the [patents]." (iControl Am. Comp. at ¶¶ 24, 31, 37, 44, 51, 58).   iControl
specifically recounts the facts of meetings and product demonstrations that occurred between
iControl and FrontPoint, through which FrontPoint became intimately familiar with iControl's
proprietary technology and products, which provides for the reasonable inference that FrontPoint
knew of the patents-in-suit.   Such allegations of specific knowledge are sufficient at the
pleadings stage.

**B.      iControl has Sufficiently Pled that FrontPoint was Willfully Blind to the Patents-in-Suit**

FrontPoint concedes that, as a matter of law, willful blindness supports induced infringement allegations in the absence of actual (or constructive) knowledge.  (Mot. at 13).  FrontPoint also concedes that iControl had pled willful blindness as to FrontPoint.  Indeed, FrontPoint's <u>only</u> argument for dismissal under a willful blindness theory is that iControl makes "conclusory allegations."

Under similar circumstances, a district court has found that the following evidence created a genuine issue of fact as to whether a defendant was willfully blind: conversations, meetings, and e-mails between an inventor and defendant's representatives; existence of licensing offers; and that information about the patent-in-suit was available on the Patent and Trademark Office's website. *See Tarkus Imaging, Inc. v. Adobe Sys.*, Case No. 10-63-LPS, 2012 U.S. Dist. LEXIS 82477 at *15–16 (D. Del. 2012) (citing *Global-Tech. Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2069 (2011)).

In the present case, iControl's complaint contains detailed factual allegations, concerning FrontPoint's intimate knowledge of and experience with iControl's proprietary technology. (iControl Am. Comp. at ¶¶ 11-20).  From these allegations, it is easily inferred that FrontPoint took deliberate measures to avoid investigating the high probability that products it sold and serviced were infringing iControl's intellectual property.

**C.      iControl has Properly Alleged that FrontPoint Intended to Cause Infringement**

FrontPoint also argues that iControl has failed to plead the intent element of induced infringement.  FrontPoint's argument is based on the misplaced notion that direct evidence is required to show intent.  The Federal Circuit has held that the requisite intent for induced

infringement may be established through circumstantial evidence, and moreover, may be inferred from all of the circumstances. *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008).

In *In re Bill of Lading*, the Federal Circuit provided guidance as to these pleading requirements for induced infringement. *In re Bill of Lading*, 681 F.3d 1323, 1341–46 (Fed. Cir. 2012) (holding that advertising directed toward customers to encourage the customers to utilize the patented invention was sufficient to plead defendants' specific intent). In that regard, the Federal Circuit held that such a review must be undertaken "in the context of the technology disclosed in the [asserted] patent and the industry to which [the defendants] sell and tout their products." *Id.* at 1340. In finding Plaintiff's complaint had adequately stated a claim for induced infringement, the Federal Circuit considered plaintiff's allegations describing the defendants' communications with customers, finding the defendants' statements regarding the benefits of their products closely resembled those benefits disclosed in the patent. Viewing this evidence, the Federal Circuit concluded that a reasonable inference could be drawn that the defendants intended their customers to infringe. In reaching this conclusion, the Federal Circuit further stated "there is no requirement that the facts alleged mimic the precise language used in a [patent] claim; what is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *Id.* at 1343.

As discussed in detail above, iControl's Amended Complaint contains detailed factual allegations that show FrontPoint's knowledge of its customers infringement, or at the very least, FrontPoint's willful blindness to such infringement. Accordingly, iControl has alleged a more than adequate factual basis on which the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678; *see also Erickson v.*

*Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting *Twombly*, 550 U.S. at 555). Because "alternative inferences from those facts [are] also reasonable [does] not render the complaint deficient." *In re Bill of Lading*, 681 F.3d at 1340.

## III.    **iControl Has Properly Pled Contributory Infringement**

FrontPoint advances four arguments in its effort to have iControl's contributory infringement claims dismissed. iControl's Amended Complaint, however, contains detailed factual allegations and reasonable inferences drawn therefrom that plausibly establish that FrontPoint has contributed to and will continue to contribute to its customers infringement of iControl's patents.

First, FrontPoint argues that iControl has failed to plead facts sufficient to establish that FrontPoint's products or services are material to a patented apparatus or process. Contrary to this assertion, iControl has specifically identified those FrontPoint products and products features that are material to iControl's patents. (*See* iControl Am. Comp. at ¶¶ 23, 30, 36, 43, 50, 57). iControl has further identified these products and product features in its preliminary infringement contentions, delivered to FrontPoint on October 4, 2013. FrontPoint's unsupported attorney argument is further undermined by its own Statement of Facts, in which it describes itself as reselling "a portion of the accused Alarm.com system." (Mot. at 8). Taken together, these factual allegations are clearly adequate to establish a claim that FrontPoint's accused products and/or services are material to iControl's patented apparatuses and/or processes.

Second, FrontPoint correctly notes that knowledge of an asserted patent is necessary to establish contributory infringement. *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2005). As stated

-12-

in the foregoing facts and argument in Section II, *supra*, iControl has adequately alleged that FrontPoint had knowledge of iControl's Patents-in-Suit, or alternatively, that FrontPoint was willfully blind as to iControl's Patents-in-Suit.

Third, although FrontPoint asserts that that contributory infringement is contingent upon an intent element, it is well-settled that contributory infringement requires "only proof of the defendant's knowledge, not *intent*, that his activity cause[s] infringement . . . ." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (emphasis in original). Because intent is not an element of pleading contributory infringement, iControl was not required to plead such an allegation in its claim of contributory infringement.

Fourth, FrontPoint employs unsupported attorney argument to conclude that "'products and services for monitoring and controlling security systems' have a wide variety of functions and uses." (Mot. at 18). Such attorney argument, without more, cannot constitute evidence for purposes of supporting a motion to dismiss. *See Nieves ex rel. Nieves v. Univ. of P.R.*, 7 F.3d 270, 280 (1st Cir. 1993) (finding factual assertions by counsel in motion papers are "generally not sufficient to create a trialworthy issue."); *Anderson v. Greene*, Case No. 05-0393-WS, 2005 U.S. Dist. LEXIS 38684 at *23–24, n. 7 (S.D. Ala. 2005) (disregarding defense counsel's "conclusory allegations" as having no basis in the record and thus insufficient for supporting a motion to dismiss).

FrontPoint further asserts that iControl "has not made a plausible argument regarding the no 'substantial non-infringing use' element . . . ." (Mot. at 18). The Federal Circuit, in *In re Bill of Lading*, addressed a similar issue concerning a motion to dismiss. *In Re Bill of Lading*, 681 F.3d at 1323. In *In re Bill of Lading*, the Federal Circuit affirmed a finding that "[b]ecause the amended complaints actually make clear on their face that [defendants'] products *do* have

-13-

substantial non-infringing uses, [plaintiff] has not stated a claim for contributory infringement . . . ." *Id.* at 1339 (emphasis in original).

Here, iControl's Amended Complaint does not suffer from this fatal flaw, in that it does not contain affirmative allegations of fact that defeat its claims of contributory infringement. On the contrary, and as noted above, FrontPoint has failed to put forth any affirmative allegations of fact that would establish that its accused products have any substantial non-infringing uses. At least one district court has agreed with *In re Bill of Lading*'s rationale, noting:

> The court agrees with Plaintiffs' argument that *In re Bill of Lading* does not establish a requirement for plaintiffs to plead a null set under the plausibility standard of *Twombly* and *Iqbal*—that it is impossible to "plead with specificity something that does not exist" and that such an outcome is therefore "illogical." . . . Accordingly, the court finds that *In re Bill of Lading* requires Plaintiffs to affirmatively plead no substantial non-infringing uses. Where Plaintiffs have not undermined that allegation with allegations of other substantial non-infringing uses elsewhere in the Complaint, as in *In re Bill of Lading*, the court has no basis to find, as in *In re Bill of Lading*, that Plaintiffs have not alleged no substantial non-infringing uses sufficiently for the court to draw a plausible inference of contributory infringement.

*Driessen v. Sony Music Entm't*, Case No. 2:09-CV-0140-CW, 2013 U.S. Dist. LEXIS 120309 at *7-8, (D. Utah Aug. 22, 2013).

Additionally, because the accused products contain software whose sole function constitutes infringement of iControl's patents, they cannot have substantial non-infringing uses. *See Ricoh Co. v. Quanta Comp., Inc.*, Case No. 06-CV-462-BBC , 2010 U.S. Dist. LEXIS 27301 (W.D. Wis. 2010) (denying defendant's motion for judgment as a matter of law of no contributory infringement and noting "I see no reason why plaintiff needed to do more than adduce evidence from which it could be reasonably inferred that the accused devices contain a component (in this case, code) that has no function but to perform the patented methods"); *Ameranth, Inc. v. Menusoft Sys. Corp.*, Case No. 2:07-CV-271-TJW-CE, 2010 U.S. Dist. LEXIS

94852 (E.D. Tex. August 23, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 94821 (E.D. Tex. September 13, 2010) (denying summary judgment of no contributory infringement and noting that in "*Lucent Technologies, Inv. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), the Federal Circuit explained that software containing numerous features, one of which is suitable only for infringing use, may lack substantial noninfringing uses. *Id.* at 1321."). Because iControl alleges that the accused products include features whose sole functions infringe iControl's patents, iControl's pleadings satisfy the requirements for pleading contributory infringement.

In light of the foregoing, iControl's Amended Complaint contains sufficient factual allegations to enable the Court to reasonably conclude that FrontPoint is liable for contributory infringement of iControl's patents.

## IV.   **iControl Has Properly Pled Willful Infringement**

As noted above, the Amended Complaint alleges that FrontPoint had knowledge of the patents-in-suit and has continued its conduct and facilitating its customers' conduct in willful disregard of iControl's patent rights. Courts have considered similar pleadings and concluded that these allegations satisfy the pleading requirements under Rule 8(a). *See Oracle Corp. v. DrugLogic, Inc.*, 807 F.Supp.2d 885 (N.D. Cal. 2011) (finding that "by alleging [defendant] was aware of the [patent] and had 'actual notice' of [plaintiff's] infringement claims, [plaintiff] has made out a 'bare' factual assertion that [defendant] has knowledge of the [patent]").

A similar pleading was at issue in *Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, Case No. 09-C-948, 2011 WL 665439 (E.D. Wis. February 14, 2011). In that case, the district court found Rule 8(a) was satisfied by a pleading that claimed "that '[the defendants'] infringement was willful,' . . . [and] that '[the defendants were] aware of [the plaintiffs' patents] prior to filing

-15-

[the] Amended Complaint' and yet continued to infringe the patents." *Id.* at *13. Like FrontPoint in this case, the defendant in *Hitachi* claimed that plaintiff needed to plead the willful infringement standard set forth in *In re Seagate* to satisfy the pleading requirements of Rule 8(a). The district court rejected this argument and stated:

> The defendants' reliance on *Seagate* for purposes of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is misplaced. Although the defendants properly assert that *Seagate* sets forth the standard for establishing willful infringement, the defendants fail to recognize that *Seagate* is not controlling for purposes of pleading under Fed. R. Civ. P. 8(a). In fact, several courts have noted that *Seagate* is not appropriate for the pleading stage of litigation, and find that a plaintiff need only meet the standards set forth in Fed. R. Civ. P. 8(a) to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

*Id.* at *9–10.

In view of the foregoing, FrontPoint's motion to dismiss iControl's willful infringement claim should be denied.

## V.  <u>Leave to Amend</u>

To the extent that the Court finds iControl's pleadings deficient, iControl requests that it be provided the opportunity to amend its pleadings to comply with any deficiencies the Court finds with respect to Rule 8.

## CONCLUSION

For the foregoing reasons, iControl requests that the Court deny FrontPoint's motion to dismiss iControl's claims of direct infringement, induced infringement, contributory infringement, and willful infringement. If the Court finds iControl's pleadings deficient, iControl requests leave to amend its pleadings to address any deficiencies identified by the Court.

Dated:  October 15, 2013                    Respectfully submitted,


                                            */s/ Mark E. Warmbier*
                                            Mark E. Warmbier
                                            Virginia State Bar No. 77993
                                            Stephen E. Noona
                                            Virginia State Bar No. 25367
                                            Matthew B. Chmiel
                                            Virginia State Bar No. 65334
                                            **KAUFMAN & CANOLES, P.C.**
                                            150 W. Main Street, Suite 2100
                                            Norfolk, VA 23510-1665
                                            Telephone:  (757) 624-3000
                                            Facsimile:  (757) 624-3169
                                            Email:  mewarmbier@kaufcan.com
                                            Email:  senoona@kaufcan.com
                                            Email:  mbchmiel@kaufcan.com


                                            James C. Yoon (*pro hac vice*)
                                            Ryan R. Smith (*pro hac vice*)
                                            Alyssa N. Knutson (*pro hac vice*)
                                            Mary Procaccio-Flowers (*pro hac vice*)
                                            **WILSON SONSINI GOODRICH & ROSATI, P.C.**
                                            650 Page Mill Road
                                            Palo Alto, CA 94304-1050
                                            Telephone:  (650) 493-9300
                                            Facsimile:  (650) 493-6811
                                            Email:  jyoon@wsgr.com
                                            Email:  rsmith@wsgr.com
                                            Email:  aknutson@wsgr.com
                                            Email:  mprocaccioflowers@wsgr.com


                                            *Counsel for Plaintiff iControl Networks, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 15, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Marc Khadpe (*pro hac vice*)
Teena-Ann Sankoorikal (*pro hac vice*)
Daniel Weinstein (*pro hac vice*)
Andrei Harasymiak (*pro hac vice*)
Roger Brooks (*pro hac vice*)
Stefan Howard Atkinson (*pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
Telephone:  212-474-1000
Facsimile:  212-474-3700
Email:  mkhadpe@cravath.com
Email:  tsankoorikal@cravath.com
Email:  dweinstein@cravath.com
Email:  aharasymiak@cravath.com
Email:  rgbrooks@cravath.com

Dabney J. Carr, IV
Robert A. Angle
**TROUTMAN SANDERS LLP**
P.O. Box 1122
Richmond, Virginia 23218-1122
dabney.carr@troutmansanders.com
roberts.angle@troutmansanders.com

*Counsel for Defendant Alarm.com, Inc.*

Michael A. Oakes
Virginia State Bar No. 42745
Alysa N. Youngson
Virginia State Bar No. 82838
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, N.W.
Washington, DC  20037
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
moakes@hunton.com
ayoungson@hunton.com

*Counsel for Defendant FrontPoint Security
Solutions, LLC*

-18-

*/s/ Mark E. Warmbier*
Mark E. Warmbier
Virginia State Bar No. 77993
Stephen E. Noona
Virginia State Bar No. 25367
Matthew B. Chmiel
Virginia State Bar No. 65334
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
Email:  mewarmbier@kaufcan.com
Email:  senoona@kaufcan.com
Email:  mbchmiel@kaufcan.com