**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ICONTROL NETWORKS, INC.,

            Plaintiff/Counterclaim-Defendant,

            v.

ALARM.COM INCORPORATED

            Defendant/Counterclaim-Plaintiff,

            and

FRONTPOINT SECURITY SOLUTIONS, LLC,

            Defendant.

Civil Action No. 13-834 (LMB/IDD)

**JURY TRIAL DEMANDED**

## ALARM.COM INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL A COMPLETE ANSWER TO REQUEST FOR PRODUCTION NUMBER 89 AND TO PRODUCE DOCUMENTS FROM THE CONFLUENCE SYSTEM

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Alarm.com Incorporated ("Alarm.com"), by its counsel, respectfully submits this reply memorandum in further support of its motion for an Order compelling Plaintiff and Counterclaim-Defendant iControl Networks, Inc. ("iControl") to provide it with access to fully-functional working versions of each version of its products and to search for and produce documents from iControl's Confluence file system responsive to Alarm.com's requests for production.

## ARGUMENT

On November 8, 2013, following months of letter-writing and one week prior to the deadline for opening expert reports, Alarm.com filed the present motion, asking for basic

access to complete, fully-functional versions of iControl's accused products, and for production

of core technical documents from iControl's repository of product specifications.  iControl has

never contended, and does not now contend, that this discovery is irrelevant or unduly

burdensome.  It is not.  Instead, iControl labels the motion as "premature" and "duplicative",

while asserting a number of off-base (though ultimately irrelevant) factual inaccuracies.[1]

iControl hopes, apparently, to confuse or conceal the real issue:  that, after months of foot-

dragging, iControl remains delinquent in its production of highly-relevant discovery necessary to

the adjudication of Alarm.com's counterclaims for patent infringement in this case.

## I.      ICONTROL HAS STILL NOT PROVIDED MEANINGFUL ACCESS TO ITS SYSTEM.

In its opposition brief, iControl does not dispute, or even mention, the central

problem identified in Alarm.com's motion, namely, that Alarm.com's counsel and experts have

not been given meaningful access to fully-functional versions of iControl's Connect and

Converge systems.

### A.      iControl's Connect Product

With regard to iControl's Connect system, the "demo" that iControl provided to

Alarm.com on November 1, 2013, (a) lacks critical functionality—including automation

features—present in the complete versions of the product that are relevant to Alarm.com's

---

[1] Without belaboring the point, Alarm.com notes that (1) counsel for Alarm.com did not agree during the September 17, 2013, meet and confer (or at any other time) "that iControl's production of the server-side executable software would be sufficient for Request for Production No. 89" (iControl's Opp'n to Alarm.com's Mot. to Compel, dated Nov. 13, 2013 ("iControl Mem."), at 2-3; Decl. of Ryan R. Smith in Supp. of iControl's Opp'n to Alarm.com's Mot. to Compel, dated Nov. 13, 2013 ("Smith Decl."), ¶ 5), but rather, Alarm.com's contemporary notes and subsequent communications to iControl confirm that Mr. Smith himself proposed during that first meet and confer the possibility of a log-in so that Alarm.com could access iControl's products (*see, e.g.*, E-mail from M. Khadpe to R. Smith, dated Sept. 19, 2013 (Ex. 2 to Alarm.com's Mem. of Law in Supp. of Mot. to Compel, dated Nov. 8, 2013 ("Opening Mem."))); and (2) counsel for Alarm.com never "renege[d]" on any agreement concerning access to iControl's system (iControl Mem. at 3).

infringement claims; and (b) does not allow access to the system via a mobile app, a core feature

which relates directly to infringement of one of Alarm.com's patents.  As Alarm.com stated in its

opening brief, such a stripped down product is not sufficient for Alarm.com to confirm its

infringement theories or test iControl's various (and conflicting) non-infringement claims.  (*See*

Opening Mem. at 1-7.)

> B.     iControl's Converge Product

For the first time ever, at 2:00 a.m. yesterday (November 13), iControl declared

that it would make a "demo system" of its Converge product available for inspection . . . in

Texas (iControl Mem. at 4)—a location iControl has never previously mentioned as an option to

Alarm.com, much less sought agreement to.  This belated offer does not remotely represent good

faith compliance with iControl's discovery obligations, for two reasons.  First, having chosen to

sue Alarm.com in this district, and having stonewalled this discovery until two days before

expert reports are due, requiring Alarm.com and its expert to travel to Texas to inspect a system

is fundamentally unreasonable.  iControl should be required to make a Converge system

available in this district, or at a mutually agreed convenient location.  Second, iControl has yet to

provide Alarm.com with any means (such as a log-in or password) for accessing its Texas

"demo" remotely—a fact Alarm.com sought unsuccessfully to remedy before iControl filed its

opposition brief.  (*See* Ltr. from S. Atkinson to R. Smith, dated Nov. 13, 2013, at 2 (attached as

Exhibit 1).)[2]  Of course it is true that "Alarm.com has yet to access" this second demo (iControl

---

[2] Alarm.com also explained in its letter to iControl how iControl's belated production of software on November 12, 2013, which Alarm.com has not requested in this motion, is "deficient".  (Ltr. from S. Atkinson to R. Smith, dated Nov. 13, 2013, at 1 (attached as Exhibit 1) ("[Y]ou provided no instructions, no installation guide, no application server and no other way to actually run the files.  Although some of the documents appear to be Java executables. running them on a Java-equipped computer has not worked.  Further, even if we could open the files you sent us, we believe we would still be left without information as to which iControl product(s), version(s) or function(s) the software is supposed to embody.").)  iControl has not responded to this letter.

Mem. at 4): Alarm.com only learned of it yesterday, it is in Texas, and we cannot access it remotely.[3] Remote access is not simply a question of convenience, but remote access via both web and mobile log-ins is critical to reviewing the core functionality that is at issue in Alarm.com's patent case against iControl.

C. iControl's Failure to Comply with the Request

Access to a barebones version of one product and no meaningful access at all (whether remote or otherwise) to another purported "demo" in Texas falls far short of any reasonable claim that iControl has "fully complied with the request" for fully-functional versions of each of iControl's accused products.[4] (*See* iControl Mem. at 1.) It has not, despite having had several months to do so. While iControl insists that "the only practical way to provide the information that Alarm.com seeks is for Alarm.com's counsel to subscribe to the ADT, Telular, Comcast, and Time Warner home security solutions" (iControl Mem. at 5), this assertion is unsupported by any facts.[5] It is not credible that iControl has no means of itself demonstrating its products—with *all* their capabilities—to prospective customers. It should be required to

---

[3] With respect to the first demo, Alarm.com has of course accessed the system, which is how Alarm.com has identified the undisputed deficiencies associated with it. (*See* Opening Mem. at 5-6.)

[4] Contrary to Mr. Smith's sworn statement that iControl "had not sought (and did not require) reciprocal discovery from Alarm.com because—in compliance with its Rule 11 obligations—iControl had purchased an Alarm.com subscription prior to filing its patent infringement claims and tested that system to confirm Alarm.com's infringement" (Smith Decl. ¶ 7), iControl did in fact request from Alarm.com, several months after it filed suit, "[t]hree samples of each of the Defendants' Accused Products, including executable versions of all software involved in running the Accused Products, whether the software resides in an Accused Product or on a server that provides services to the Accused Product" (iControl's 3d Set of Requests for Production, dated Oct. 2, 2013, at 11 (No. 102) (attached as Exhibit 2)).

[5] iControl cites *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp. 356, 367 (E.D. Va. 1994), for the proposition that iControl cannot legally provide Alarm.com access to ADT Pulse and its other dealers' systems. (*See* iControl Mem. at 4.) That is false. As an initial matter, *MAI Systems* is inapposite, as it involved allegations by a copyright owner that another party had misused its copyrights under a license agreement by using the copyrights to violate antitrust laws. iControl has pointed to no license agreement with any third party that would be violated by its provision of that third-party's security system to Alarm.com. Moreover, the parties have negotiated and the Court has entered a highly-protective Confidentiality Stipulation and Protective Order [Dkt. #41], paragraph 21 of which deals expressly with "Requests That Encompass Third Party Confidential Information".

provide this capability to Alarm.com.  Indeed, if Alarm.com were required to inspect an "ADT"
or a "Telular" system, we anticipate with confidence that iControl would then argue that
Alarm.com has not proven that what it inspected represented what *iControl* provides to its
customers.   A workable solution could be achieved if (a) iControl arranges access by Alarm.com
counsel and experts to fully-functional end-user systems (such as an installed ADT system and
an installed Comcast system) in this district or a mutually-agreeable location, and (b) stipulates
that these systems are representative of iControl's accused Connect and Converge products,
respectively.  We look forward to iControl's response to this proposal prior to or at tomorrow's
hearing.  (*See* iControl Mem. at 4 n.4.)

## II.   ICONTROL HAS STILL NOT PRODUCED RESPONSIVE DOCUMENTS FROM CONFLUENCE.

The "Confluence" system is a file system which iControl uses, in the ordinary
course of its business, to store (perhaps in addition to other documents) current and historical
versions of technical documentation of its products.  (*See* Dawes Tr. 169:6-15 (Ex. 19 to
Opening Mem.); Fulker Tr. 87:9-15 (Ex. 18 to Opening Mem.).)  It is not true that Alarm.com
requested that iControl search its Confluence system "for the first time" (iControl Mem. at 5) in
its opening memorandum.  On the contrary, Alarm.com requested this search on October 29,
2013, one day after learning the facts concerning Confluence during the deposition of
iControl's Rule 30(b)(6) deponent Mr. Dawes.  In fact, before filing the present motion ten days
later, Alarm.com sent to iControl five separate, unanswered written communications concerning
Confluence (*see* Ltr. from R. Brooks to R. Smith, dated Oct. 29, 2013 (Ex. 23 to Opening
Mem.); Ltr. from M. Khadpe to R. Smith, dated Nov. 1, 2013 (Ex. 24 to Opening Mem.); Ltr.
from M. Khadpe to R. Smith, dated Nov. 6, 2013 (Ex. 25 to Opening Mem.); E-mail from M.
Khadpe to R. Smith, dated Nov. 7, 2013 (Ex. 17 to Opening Mem.); E-mail from M. Khadpe to

R. Smith, dated Nov. 8, 2013 (Ex. 17 to Opening Mem.))—none of which received any answer concerning Confluence—and had attempted to meet and confer on the issue (to no avail) no fewer than three times.[6]

iControl does not dispute that its Confluence file system contains responsive documents, nor does it deny that it has not previously searched or produced documents from its Confluence file system.  Instead, iControl now asserts (a) that there is no need for it to search the Confluence file system, because its contents would probably be "duplicative" of documents already produced (iControl Mem. at 6), and (b) that iControl is now, at long last, searching Confluence for responsive documents.

Alarm.com is accusing iControl products of infringement over a period of years. iControl's historical archive of technical documentation is exactly where one would look for documents relevant to earlier years.[7]  There is no support for iControl's assertion that everything stored in its Converge archive will be "duplicative":  on the contrary, deposition testimony cited

---

[6] Mr. Smith asserts in his declaration that, "[o]n Friday, November 8, 2013, before the Motion's filing, counsel for iControl attempted to meet and confer with Alarm.com regarding Request for Production No. 59, but Alarm.com refused to discuss the issue".  (Smith Decl. ¶ 16.)  That statement is contradicted by the written communications between the parties.  On November 6, counsel for Alarm.com sought to confer with counsel for iControl on the topics relevant to the present motion, and proposed doing so on November 7. (*See* Letter from M. Khadpe to R. Smith, dated Nov. 6, 2013 (Ex. 16 to Opening Mem.) (indicating availability to confer on Nov. 7).)  Receiving no response, counsel for Alarm.com conferred with counsel for iControl at depositions held on both November 7 and November 8, but the iControl attorneys present referred us to their absent colleague, Mr. Smith.  (*See* E-mail from M. Khadpe to R. Smith, dated Nov. 7, 2013 (Ex. 17 to Opening Mem.).)  When Mr. Smith did eventually reach out to Alarm.com on November 8 (E-mail from R. Smith to M. Khadpe, dated Nov. 8, 2013 (Ex. 17 to Opening Mem.)), Alarm.com responded immediately, proposing a time that afternoon to talk and setting forth the topics for discussion, including "access to fully-functional versions of iControl's products" and "the production of documents . . . from Confluence" (E-mail from M. Khadpe to R. Smith, dated Nov. 8, 2013 (Ex. 17 to Opening Mem.)).  Counsel for iControl never responded to that email.

[7] It bears noting that Alarm.com exported and produced to iControl more than 1,400 documents from its "Bug Tracker" SQL database, which stores documents and communications associated with changes to Alarm.com products over time; and more than 400 documents from its "Subversion" file system, which— similarly to iControl's Confluence system—archives the history of technical documents associated with Alarm.com's products.

in Alarm.com's opening brief makes clear that that is not the case.  (*See* Dawes Tr. 168:12-170:17 (Ex. 19 to Opening Mem.) (email reflecting discussion of revisions to a product requirement document on Confluence that was not produced to Alarm.com); Fulker Tr. 86:12-87:15 (Ex. 18 to Opening Mem.) (testimony that updated versions of a specification that was produced may be stored in Confluence); Opening Mem. at 8 n.14.)  Production of documents from iControl's primary repository of product specifications is *particularly* important because in some cases iControl witnesses have testified that descriptions of product functionality in documents that iControl *has* produced from other sources are not accurate.  (*E.g.*, Dawes Tr. 175:12-24 (Ex. 19 to Opening Mem.); Gates Tr. 183:15-184:15 (Ex. 20 to Opening Mem.).)

As to iControl's assurance that it is *now* searching its Confluence file system, this comes a little late.  As of the filing of this rebuttal—the day before expert reports are due—iControl has not made any production from that repository—not even the specific technical document that iControl's Rule 30(b)(6) witness Mr. Dawes testified would be found there.  (Dawes Tr. 168:12-170:17 (Ex. 19 to Opening Mem.).)  At this late date, Alarm.com should not be required to rely on iControl's rather noncommittal assurance that it will "*attempt*[]" to produce files from Confluence.  (*See* iControl Mem. at 6 (emphasis added).)  Instead, Alarm.com respectfully requests that the Court grant Alarm.com's motion so that iControl will be *required* to produce responsive documents from the Confluence repository without additional delay.

## CONCLUSION

For the foregoing reasons, Alarm.com respectfully renews its request that the Court enter an Order (i) compelling iControl to provide it with access to working, fully-functional versions of each version of its Connect and Converge products that it currently offers or supports, including access to the web portal and mobile app; (ii) compelling iControl to search and

produce documents from its Confluence repository that are responsive to Alarm.com's Requests

for Production; (iii) allowing Alarm.com's experts to submit supplemental reports addressing

any additional discovery obtained from iControl; (iv) awarding Alarm.com its fees and costs in

bringing this motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(A); and (v) granting

such other relief as is deemed appropriate.


Dated:  November 14, 2013

                                        ALARM.COM INCORPORATED


                                        By_____/s/_____
                                                Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com


Roger G. Brooks
Teena-Ann V. Sankoorikal
Andrei Harasymiak
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 8th Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
rgbrooks@cravath.com
tsankoorikal@cravath.com
aharasymiak@cravath.com


*Counsel for Defendant Alarm.com Incorporated*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of November, 2013, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which then will send automatic notification of such filing (NEF) to the following:

James C. Yoon
Ryan R. Smith
Alyssa N. Knutson
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
jyoon@wsgr.com
rsmith@wsgr.com
aknutson@wsgr.com

Stephen E. Noona
Mark E. Warmbier
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
mewarmbier@kaufcan.com

*Attorneys for Plaintiff iControl Networks, Inc.*

Michael A. Oakes
Alysa N. Youngson
Hunton & Williams, LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
moakes@hunton.com
ayoungson@hunton.com

*Attorneys for Defendant FrontPoint Security Solutions, LLC*


                        /s/
Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com
*Counsel for Defendant Alarm.com Incorporated*