# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ICONTROL NETWORKS, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALARM.COM INCORPORATED; )<br>FRONTPOINT SECURITY SOLUTIONS, LLC )<br>)<br>Defendants. )<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:13-cv-834-LMB/IDD<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF ICONTROL NETWORKS, INC.'S
THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS
TO DEFENDANTS (NOS. 86-105)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff iControl Networks, Inc. ("iControl") requests that Defendants Alarm.com Incorporated ("Alarm.com") and FrontPoint Security Solutions, LLC ("FrontPoint") produce for inspection and copying the documents and things described below, within 30 days of service of these requests for production. The production shall be made at the offices of Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, CA, 94304, or at some other place to be agreed upon by the parties.

**DEFINITIONS**

1.      The terms "You," "Your," "Yourself," or "Defendant," means Defendant Alarm.com Incorporated or Defendant FrontPoint Security Solutions, LLC, its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

2. The term "iControl" means Plaintiff iControl Networks, Inc., its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

3. The term "Microstategy" means Microstrategy, Inc., its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

4. The term "GE Security" means the division of General Electric Inc.'s GE Enterprise Solutions, its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

5. The term "Tyco Security" or "Tyco Security Products" means Tyco International, Ltd., its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

6. The term "UTC" means United Technologies Corporation, its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

7. The term "Qolsys" means Qolsys Inc., its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees,

agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

8. The term "Vivint" means Vivint, Inc., its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

9. The term "Pinnacle Security" means Pinnacle Security, LLC., its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

10. The term "Monitronics" means Monitronics International, its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

11. The term "2GIG" means 2GIG Technologies Corporation, including Nortek, Inc. its predecessors and successors, subsidiaries and related companies, and its present and former officers, directors, employees, agents, representatives, consultants, attorneys, accountants, and others acting or purporting to act on its behalf.

12. The term "Asserted iControl Patents" means collectively and/or individually: U.S. Patent No. 7,262,690 ("the '690 Patent"); U.S. Patent No. 7,911,341 ("the '341 Patent"); U.S. Patent No. 8,073,931 ("the '931 Patent"); 8,335,842 ("the '842 Patent"); U.S. Patent No. 8,473,619 ("the '619 Patent"); and U.S. Patent No. 8,478,844 ("the '844 Patent") or any other patent asserted by iControl in the above captioned litigation.

13. The terms "Defendants' Accused Products," "Accused Alarm.com Product(s)," or "Accused FrontPoint Product(s)" means any and all products identified by iControl of infringement, including without limitation Defendants' products and services for monitoring and controlling security systems, including at least the technology identified on Defendants' websites related to interactive security systems (e.g., the Interactive Security and Home Automation products and services). *See* http://www.alarm.com and http://www.frontpointsecurity.com. The term "Accused Product(s)" encompasses each and every version of Accused Product identified in response to Plaintiff's Interrogatory No. 1 and/or as identified in iControl's Identification of Asserted Claims and Accused Products, served September 25, 2013.

14. The term "Asserted Alarm.com Patents" means collectively and/or individually: U.S. Patent No. 7,113,090 (the "'090 Patent"), 8,350,694 (the "'694 Patent"), and 8,493,202 (the "'202 Patent") or any other patent asserted by Alarm.com in the above captioned litigation.

15. The term "Accused iControl Products" means OpenHome or any other product accused of infringement in the above captioned litigation.

16. "Related patent" or "patent related to" means any patent that issued from any application that: (a) is a parent, child, or ancestral application related in any way to a given patent; (b) is a continuation application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination, reissue application, provisional application, or abandoned application of a given patent or the application that led to a given patent; (c) claims priority in whole or in part from a given patent or the application that led to a given patent; (d) is the basis for a claim of priority in whole or in part (including claims of benefit under 35 U.S.C. §§ 119(e) or 120) for a given patent; or (e) shares subject matter with a given patent.

17. "Related application" or "application related to" means any patent application that: (a) is a parent, child, or ancestral application related in any way to a given application; (b) is a continuation application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination, reissue application, provisional application, or abandoned application of a given application; (c) claims priority in whole or in part from a given application; (d) is the basis for a claim of priority in whole or in part (including claims of benefit under 35 U.S.C. §§ 119(e) or 120) for a given application; or (e) shares subject matter with a given application.

18. The term "Action" means *iControl Networks, Inc. v. Alarm.com Inc. et al.*, C.A. No. 13-834 (LBM/IDD) (E.D. Va.), and any appeals therefrom.

19. The term "documents" means any document or thing as defined in Rule 34(a) of the Federal Rule of Civil Procedure 34(a) and "writing and recording" as defined in Rule 1001(1) of the Federal Rule of Evidence, including without limitation electronic documents and information in any form in which it may exist.

20. The terms "communication(s)" or "communicated" means all conveyances of information between any person or entity by or through any mode or medium including, but not limited to, the spoken word, written or electronic correspondence, face-to-face meetings, and/or conveying information through third persons.

21. The term "person" means, unless otherwise specified, any natural person, firm, entity, company, corporation, partnership, trust, proprietorship, association, joint venture, government or government agency or other form of business organization or arrangement of every nature and type, and its agents and employees.

22. Use of the singular also includes the plural and vice-versa.

23. The terms "and" and "or" should be understood either disjunctively or conjunctively as necessary to bring within the scope of any request all information that might otherwise be construed to be outside of its scope.

24. "Any" and "all" should be understood to include "each and every."

25. As used herein, "include" and "including" shall be construed to mean "without limitation," so as to give the broadest possible meaning to requests and definitions containing those words.

26. As used herein, "related" or "relating" to any given subject means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to, in any way, the particular subject matter identified.

## INSTRUCTIONS

27. Responses to these requests should include all documents and things in Your possession, custody, or control, including all documents and things in the possession, custody, or control of Your attorneys, as well as anyone investigating any matter relating to this lawsuit on Your or Your attorneys' behalf.

28. In the event that documents or things called for by these requests were formerly in Your possession, custody, or control, but are no longer in Your possession, custody, or control, those documents and things should be identified in writing by specifying the following for each such document: the type of document; a general description of the information contained within the document; the identities of the author(s), addresser(s), addressee(s), or any indicated or blind copy recipients; the date of creation or transmittal; the date of loss or destruction; any person, firm, or corporation who may have possession, custody, or control of a partial or complete copy

of such document; and, if destroyed, the manner of destruction, reason for destruction, the identities of the persons authorizing destruction and persons participating in the destruction.

29. Documents should be produced in full and in their unexpurgated form.

30. Documents should be produced as they are kept in the usual course of business or otherwise organized and labeled so as to correspond to the requests set forth herein. Documents from any single file should be produced in the same order as they were found in such file. If copies of documents are produced, such copies should be legible and bound or stapled in the same manner as the original.

31. All requested documents, things, or electronically stored information stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form should be produced, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations.

32. If any documents or information otherwise responsive to these requests is withheld on a claim of privilege or subject to protection as trial preparation material or work product immunity or other immunity from discovery, each such document should be identified in writing by specifying the following for each such document: the type of document; a general description of the information contained within the document; the identities of the author(s), addresser(s), addressee(s), or any indicated or blind copy recipients; and the date of creation or transmittal. In addition, for each such document, You should (1) indicate that it claims privilege therefore, (2) state the grounds on which the claim of privilege rests, (3) indicate the position held by the person who prepared the document and the position held by the addressee, (4) describe the subject matter of the document in detail, and (5) identify all other persons, and their positions, who received copies of the document, either at the time of initial distribution or at any

subsequent time. Such information shall be provided in order that iControl and the Court may have a suitable basis to determine whether the document is in fact privileged.

33. If the meaning of any term in these requests is unclear, You should assume a reasonable meaning, state what the assumed meaning is, and produce documents on the basis of that assumed meaning.

34. These requests are continuing and in the event that You discover or receive additional documents that are responsive to these requests, You should immediately produce to iControl's counsel all such additional documents.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 86:**

All communications with GE Security regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 87:**

All documents and things relating to GE Security, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or GE Security's products or services as they relate Defendants or the Defendants' Accused Products.

**REQUEST NO. 88:**

All communications with Tyco Security regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 89:**

All documents and things relating to Tyco Security, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or Tyco

Security's products or services as they relate to Defendants or the Defendants' Accused Products.

**REQUEST NO. 90:**

All communications with UTC regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 91:**

All documents and things relating to UTC, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or Tyco Security's products or services as they relate to Defendants or the Defendants' Accused Products.

**REQUEST NO. 92:**

All communications with Qolsys regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 93:**

All documents and things relating to Qolsys, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or Qolsys's products or services as they relate Defendants or the Defendants' Accused Products.

**REQUEST NO. 94:**

All communications with Vivint regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 95:**

All documents and things relating to Vivint, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or Vivint's products or services as they relate Defendants or the Defendants' Accused Products.

**REQUEST NO. 96:**

All communications with Pinnacle Security regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 97:**

All documents and things relating to Pinnacle Security, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or Pinnacle products or services as they relate Defendants or the Defendants' Accused Products.

**REQUEST NO. 98:**

All communications with Monitronics regarding iControl, the Accused iControl Products, the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 99:**

All documents and things relating to Monitronics, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or Monitronics's products or services as they relate to Defendants or the Defendants' Accused Products.

**REQUEST NO. 100:**

All communications with 2GIG regarding iControl, the Accused iControl Products, or the Asserted iControl Patents or Related patents or Related applications.

**REQUEST NO. 101:**

All documents and things relating to 2GIG, including but not limited to licensing agreements, service agreements, indemnification agreements, marketing agreements, or 2GIG's products or services as they relate to Defendants or the Defendants' Accused Products.

**REQUEST NO. 102:**

Three samples of each of the Defendants' Accused Products, including executable versions of all software involved in running the Accused Products, whether the software resides in an Accused Product or on a server that provides services to the Accused Product.

**REQUEST NO. 103:**

All communications with anyone listed on Defendants' initial or supplemental disclosures under Federal Rule of Civil Procedure 26 concerning the subject matter of this Action, including the Asserted iControl Patents, Accused iControl Products, Asserted Alarm.com Patents, or Defendants' Accused Products.

**REQUEST NO. 104:**

All documents concerning Defendants' corporate policies and actual practices concerning freedom to operate searches, product clearances, right to use opinions, or other mechanisms, if any, to determine whether a product would infringe any parties' patent rights prior to commercial sale of the product.

**REQUEST NO. 105:**

From 2007 to the present, all minutes of any meeting of your Board of Directors, operating or executive committees, or any other management committee concerning patents, licensing, royalties, iControl, the iControl Patents, the iControl Accused Products, the Alarm.com Patents, or the Alarm.com Accused Products., or this Action.

Dated:  October 2, 2013

Respectfully submitted,

By: */s/ James C. Yoon*
James C. Yoon (*pro hac vice*)
Ryan R. Smith (*pro hac vice*)
Alyssa N. Knutson (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 493-6811
Email:  jyoon@wsgr.com
Email:  rsmith@wsgr.com
Email:  aknutson@wsgr.com

Stephen E. Noona
Virginia State Bar No. 25367
Mark E. Warmbier
Virginia State Bar No. 77993
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169
Email:  senoona@kaufcan.com
Email:  mewarmbier@kaufcan.com

***Counsel for Plaintiff iControl Networks, Inc.***

## CERTIFICATE OF SERVICE

      I hereby certify that on October 2, 2013, I served by electronic mail the foregoing pleadings to the following counsel of record:

Marc Khadpe
Teena-Ann Sankoorikal
Daniel Weinstein
Andrei Harasymiak
Roger Brooks
Stefan H. Atkinson
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
mkhadpe@cravath.com
tsankoorikal@cravath.com
dweinstein@cravath.com
aharasymiak@cravath.com
rgbrooks@cravath.com
satkinson@cravath.com

Dabney J. Carr, IV
Robert A. Angle
**TROUTMAN SANDERS LLP**
P.O. Box 1122
Richmond, Virginia 23218-1122
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

*Counsel for Defendant Alarm.com, Inc.*

Michael A. Oakes
Alysa N. Youngson
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
moakes@hunton.com
ayoungson@hunton.com

*Counsel for Defendant FrontPoint Security Solutions, LLC*

*/s/ James C. Yoon*
James C. Yoon
Ryan R. Smith
Alyssa N. Knutson
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
jyoon@wsgr.com
rsmith@wsgr.com
aknutson@wsgr.com

*Counsel for Plaintiff iControl Networks, Inc.*