**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ICONTROL NETWORKS, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> ALARM.COM INCORPORATED <br><br> Defendant/Counterclaim-Plaintiff, <br><br> and <br><br> FRONTPOINT SECURITY SOLUTIONS, LLC, <br><br> Defendant. | Civil Action No. 1:13CV-834 <br> (LMB/IDD) <br><br> **JURY TRIAL DEMANDED** |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNT I FOR LACK OF SUBJECT MATTER JURISDICTION

Alarm.com Incorporated ("Alarm.com") and FrontPoint Security Solutions, LLC ("FrontPoint") (collectively, "Defendants") respectfully submit this reply memorandum in support of their motion to dismiss Count I of the Amended Complaint for lack of standing and subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Count I of the Amended Complaint seeks relief for infringement of U.S. Patent No. 7,262,690 ("the '690 Patent"). Count I of the original Complaint also sought relief for infringement of the '690 Patent.

iControl does not dispute that it lacked standing to bring a claim for infringement of the '690 Patent at the time it filed the original Complaint. Nor does iControl dispute that "plaintiffs must generally hold qualifying legal rights to an asserted patent when the lawsuit commences to be afforded standing." (iControl's Mem. in Opp'n to Defs.' Mot. to Dismiss, dated Nov. 22,

2013 ("iControl Mem.") at 5 (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)).) Rather, iControl contends that the filing of its Amended Complaint after the assignment of the '690 Patent to iControl cured its initial lack of standing. (iControl Mem. at 2.) But no "cure" occurred.

Under well-established precedent, including a controlling Federal Circuit decision that iControl ignores, a court may exercise jurisdiction over a patent infringement claim *only* if the plaintiff held title to the asserted patent at the inception of suit. As one court has explained, "it is not too much to ask sophisticated patent litigants to be careful when it comes to the threshold issue of standing" and such a plaintiff's "rush to sue [] cannot excuse the stern necessity of perfecting the required title before suit." *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490, at *3-4 (N.D. Cal. Feb. 4, 2008). Because iControl did not perfect title in the '690 Patent before filing suit, Count I should be dismissed.

## **ARGUMENT**

I. **COUNT I FOR INFRINGEMENT OF THE '690 PATENT SHOULD BE DISMISSED REGARDLESS OF ICONTROL'S FILING OF AN AMENDED COMPLAINT AFTER THE ASSIGNMENT OF THE '690 PATENT TO ICONTROL.**

iControl asserts that the case law relied upon by Defendants "involved attempts to retroactively cure standing *after* the filing of the operative complaint and is therefore inapposite." (iControl Mem. at 2 (emphasis in original).) But iControl ignores *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010), a controlling Federal Circuit opinion that looked to the original complaint rather than the amended complaint to evaluate standing, even

2

though, as here, the asserted patents had been assigned to the plaintiff *before* the filing of the operative amended complaint. As demonstrated below, *Abraxis* requires dismissal of Count I.[1]

In *Abraxis*, the plaintiff filed an amended complaint four days after an effective assignment of the asserted patents to the plaintiff. *Id.* at 1366 & n.3. The district court had granted the plaintiff's motion to file an amended complaint for reasons unrelated to the assignment. *Id.* at 1367. After the amended complaint was filed, defendants moved to dismiss for lack of standing on the ground that the plaintiff did not have rights in the asserted patents at the time the original complaint was filed. *Id.* at 1363. In holding that the action should have been dismissed for lack of standing, the Federal Circuit stated in unequivocal language that "[a] court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Id.* at 1364 (citing *Keene Corp. v. United States,* 508 U.S. 200, 207 (1993)). "[W]e have held that in a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Id.* (quoting *Paradise Creations,* 315 F.3d at 1309-310). "Thus, 'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit." *Id.* (quoting *Schreiber Foods,* 402 F.3d at 1203).

In *Abraxis*, the Federal Circuit specifically held that it could not consider the plaintiff's standing as of the date that the *amended* complaint had been filed:

> "While [plaintiff] filed an amended complaint on November 16, 2007, we look to the date of the original Complaint, March 15, 2007, because 'the jurisdiction of the Court depends on the state of things at the time of the action brought.' *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S. Ct. 2035, 124 L. Ed. 2d 118

---

[1] Federal Circuit law governs the question of whether a district court has jurisdiction over a patent infringement claim. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1202 (Fed. Cir. 2005).

3

> (1993); *see Schreiber Foods*, 402 F.3d at 1203, n.7 ('The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended.'); FED. R. CIV. P. 15(a) & (c) (requiring an amended pleading to relate back to the date of the original pleading when the amendment asserts a claim that arises out of the conduct, transaction, or occurrence set out in the original pleading)."

*Id.* at 1373 n.3. Thus, under *Abraxis*, a court may not consider *any* amended complaint, whether filed as a matter of course or not, to determine standing.

Rather than address *Abraxis*, iControl relies upon cases that either do not discuss standing considerations at all, address standing where no amended complaint was filed, or pre-date (or fail to address) *Abraxis*. None of the cases undermine the governing holding in *Abraxis* that standing in patent infringement cases is determined at the date of the filing of suit rather than at the date of an amended complaint.

*First*, iControl relies upon cases that simply hold that a court may consider an amended complaint when analyzing federal question jurisdiction, a separate question from the determination of standing. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (addressing whether plaintiffs' False Claims Act claims in an amended complaint established federal question jurisdiction); *Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1240 (7th Cir. 1981) (allowing plaintiff to amend complaint to cure defective allegation of federal question jurisdiction); *Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 16 (1st Cir. 2013) (holding that claims in amended complaint did not arise under federal law); *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 919 (E.D. Va. 1994) *aff'd sub nom. Virginia Beach Policemen's Benev. Ass'n v. Reich*, 96 F.3d 1440 (4th Cir. 1996) (granting plaintiffs' motion to amend complaint to add plaintiffs whose presence would provide the court with

4

federal subject matter jurisdiction).[2] These cases do not address standing and therefore do not undermine the extensive Supreme Court and Federal Circuit authority holding that standing must be determined as of the date suit is filed. *See Keene Corp.*, 508 U.S. at 207; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Abraxis*, 625 F.3d at 1364; *Paradise Creations*, 315 F.3d at 1308.

*Second*, iControl relies upon several cases that do not address whether the filing of an amended complaint confers standing where standing did not exist at the time the lawsuit was commenced. For example, in *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 n.2, 735 n.6 (Fed. Cir. 1988), the plaintiff filed a second action rather than an amended complaint—the exact course of action that a plaintiff must take when initial standing is lacking. Other cases iControl cites also do not support its position. *See Nat'l Alliance For Accessibility, Inc. v. Cl Maryland Bus. Trust*, No. PWG-12-3224, 2013 WL 4229262 (D. Md. Aug. 14, 2013) (defendant objected to the filing of an amended complaint not on the basis that an amended complaint cannot cure standing deficiencies but because it contained merely conclusions and formulaic recitations of a cause of action) (dismissing amended complaint for mootness); *3M Co. v. Kinik Co.*, No. Civ. 04-123 ADM/AJB, 2004 WL 1328268 (D. Minn. June 15, 2004) (ruling that an amended complaint should be reviewed to determine jurisdiction over a new claim that was not asserted in the original complaint).

---

[2] The *Rockwell* decision is distinguishable on additional grounds. In *Rockwell*, the Supreme Court recognized that "demonstration that the original allegations were false will defeat jurisdiction" but then stated that withdrawal of those allegations in an amended complaint would defeat jurisdiction as well, "unless they are replaced by others that establish jurisdiction." *Id.* at 473-74. The Court then examined the allegations in the amended complaint, not because they could overcome deficiencies set forth in the original complaint, but because they did not support federal question jurisdiction by themselves. *Id.* at 474.

*Third*, iControl relies upon three district court cases in other jurisdictions where standing was evaluated as of the time of an amended complaint, but those cases predate, or do not address, the Federal Circuit's 2010 *Abraxis* decision. In a 2009 Western District of New York decision in *Williams Adv. Materials, Inc. v. Target Tech. Co.*, No. 03– CV–00276(A)(M), 2009 WL 3644357, at *7 (W.D.N.Y. Oct. 28, 2009), the defendants did not even argue that standing should be determined as of the date of the first complaint, but instead argued solely that the amended complaint did not confer standing. In another case predating *Abraxis*, the District of Kansas in *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1160-61 (D. Kan. 2009) followed the reasoning of the district court in *Randolph-Rand Corp. v. Shafmaster Co.,* No. Civ. 97-44-M, 1999 WL 814367 (D.N.H. April 8, 1999), in which the district court denied a motion for summary judgment premised on lack of standing, because the plaintiff had standing at the date of the amended complaint. But the theory of *Randolph, Bushnell* and *Williams Adv. Materials* has clearly been overturned by *Abraxis*, 625 F.3d at 1366-67.

The 2011 *Barnes & Noble* decision from the Northern District of California, *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 985 (N.D. Cal. 2011), cited by iControl, does post-date *Abraxis*, but does not discuss or even mention it; apparently, the parties did not bring that governing authority to the *Barnes & Noble* court's attention. As a result, the *Barnes & Noble* court erred: it distinguished the Federal Circuit's decisions in *Enzo* and *Schreiber Foods* on the basis that in those cases the Federal Circuit had not confronted the scenario "where the complaint under consideration was the amended complaint." *Id.* at 985. But in *Abraxis* the Federal Circuit confronted exactly that scenario and held that the amended complaint was irrelevant and that standing has to exist as of the filing of the *initial* complaint.

Because it is undisputed that iControl lacked standing when it filed suit, Count I should be dismissed.

## II. THE DISMISSAL OF COUNT I IS FULLY CONSISTENT WITH THE POLICY CONCERNS RAISED BY THE FEDERAL CIRCUIT IN ITS PATENT STANDING CASES.

iControl asserts that dismissing a claim where standing has been corrected through the filing of an amended complaint would be contrary to sound policy. (iControl Mem. at 8-10.) In fact, policy concerns specifically articulated by the Federal Circuit fully support dismissal of Count I.

Both parties agree that the Federal Circuit in its *Enzo* decision provided the rationale as to why plaintiffs should not be allowed to cure a standing deficiency retroactively:

> "As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day."

*Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998) (quoting *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995)).

Precisely these concerns would be implicated by the establishment of the rule (advocated by iControl) that a complaint amended as a matter of course could cure initial standing deficiencies. If that were the rule, plaintiffs could bring a claim for infringement of a patent in which they have no rights while alleging that an assignment is imminent. Plaintiffs might have

7

an interest in doing so in order to file an infringement complaint before their adversary files a related complaint in a different venue. After reviewing a defendant's answer or motion to dismiss (or if early post-suit settlement efforts failed), a plaintiff could then seek to finalize the assignment; in some cases, the assignment would likely never take place. Allowing plaintiffs to operate in this manner would no doubt "enmesh the judiciary in abstract disputes, risk multiple litigation[s], and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation." *Enzo*, 134 F.3d at 1093-94.

iControl sets forth several arguments in support of its position that an amended complaint filed as a matter of course after an assignment does not implicate the Federal Circuit's policy concerns. None of them are convincing. *First*, iControl notes that in both *Enzo* and *Abraxis* the plaintiffs waited approximately eight months into the litigation before executing an assignment to cure their standing deficiencies, and argues that such "lengthy delays create obvious costs to judicial efficiency and certainty" whereas allowing standing based on an earlier amended complaint does not. (iControl Mem. at 8-9.) But neither the *Enzo* nor *Abraxis* courts relied upon the *length* of delay to justify their rulings, and there is no basis to believe that shorter delays would have altered those rulings.

*Second*, iControl argues that because dismissals for lack of standing in patent cases are typically without prejudice, requiring a plaintiff to bring another case after standing has already been cured would create delay and expense. (*Id.* at 9.) But this argument, if accepted, would mean that a court should *never* dismiss a case without prejudice for lack of standing, so long as a plaintiff has taken steps that allow for standing if a new case is filed. *Abraxis* clearly rejected any such "pragmatic" relaxation of the strict standing requirement, requiring dismissal of that

case for lack of original standing even after a seven day bench trial had been conducted. 625 F.3d at 1363-64.

*Third*, iControl argues that the Court's jurisdiction over *some* of iControl's claims at the onset of this case weighs in favor of finding jurisdiction over claims as to which iControl undisputedly did *not* have standing when it filed suit. (iControl Mem. at 10 (relying upon *Barnes & Noble*, 823 F. Supp. 2d at 985).) But it is clear that a plaintiff must have standing separately for *each* claim it brings, a rule iControl acknowledges. (iControl Mem. at 5 (recognizing that "plaintiffs must generally hold qualifying legal rights *to an asserted patent* when the lawsuit commences to be afforded standing") (emphasis added).) To allow claims with standing defects to survive, but only if joined to claims without such defects, would eviscerate standing requirements in an arbitrary fashion. It would also encourage plaintiffs to bring additional claims based on any patent in which they have an ownership interest (but otherwise would not have asserted) to establish standing for a claim of infringement of a patent in which they do not yet have an ownership interest. This cannot be and is not the law.

There is another significant policy concern that supports dismissal of Count I: allowing a plaintiff to cure standing deficiencies through the filing of an amended complaint would discourage plaintiffs from performing the investigation into title that should be conducted before the filing of suit. A district court confronted with a motion to dismiss a patent infringement claim for lack of standing identified precisely this concern:

> "In light of the proliferation of patent-infringement actions, it is not too much to ask sophisticated patent litigants to be careful when it comes to the threshold issue of standing. It is a simple task to execute express license agreements that satisfy the Federal Circuit standard. Among affiliated companies, it should be even simpler. It is true that patent litigants sometimes rush to stake out venue in a preferred forum. A rush to sue, however, cannot excuse the stern necessity of perfecting the required title before suit.

> District judges cannot overlook a defect in the chain of title, for the entirety of massive litigation might wind up being vacated years later, for lack of threshold standing. *See Gaia Techs., Inc., v. Reconversion Techs., Inc.,* 93 F.3d 774 (Fed. Cir. 1996) (vacating a final judgment after a full trial on the merits because of a deficiency in standing). As carpenters say, it is wise to 'measure twice and cut once.'"

*Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490, at *3 (N.D. Cal. Feb. 4, 2008) (dismissing patent infringement action where plaintiff lacked an interest in the patent at the time it brought suit, despite having obtained an assignment four months after suit was filed).

This case illustrates the problems identified by the *Quantum* court. In its original complaint, iControl alleged that "iControl is the owner and assignee of all right, title and interest in and to the '690 Patent and holds the right to sue and recover damages for infringement thereof." (Dkt. 1 ¶ 22.) In fact, as iControl now admits, this allegation was flatly false. Instead, the '690 Patent was owned by Vandelay Industries Holding Company ("Vandelay"), a company affiliated with iControl, but a separate legal entity. As the *Quantum* court noted, given the affiliation between iControl and Vandelay, it should have been simple for iControl to perfect title in the '690 Patent prior to filing suit. Allowing an amended complaint here to cure iControl's lack of standing when it filed its original complaint would reward inattention and discourage other plaintiffs from "be[ing] careful when it comes to the threshold issue of standing." *Quantum*, 2008 WL 314490, at *3.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Count I of the Amended Complaint for lack of standing and subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

                                                   ALARM.COM INCORPORATED

                                                   By      /s/
                                                                        Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
**TROUTMAN SANDERS LLP**
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutmansanders.com
robert.angle@troutmansanders.com

Roger G. Brooks
Teena-Ann V. Sankoorikal
Andrei Harasymiak
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 8th Avenue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
rgbrooks@cravath.com
tsankoorikal@cravath.com
aharasymiak@cravath.com
*Counsel for Defendant Alarm.com Incorporated.*

                                                  FRONTPOINT SECURITY SOLUTIONS, LLC

                                                 By      /s/
                                                              Of Counsel

Michael A. Oakes
Alysa N. Youngson
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
moakes@hunton.com
ayoungson@hunton.com

*Attorneys for Defendant FrontPoint Security Solutions, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of November, 2013, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which then will send automatic notification of such filing (NEF) to the following:

James C. Yoon
Ryan R. Smith
Alyssa N. Knutson
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
jyoon@wsgr.com
rsmith@wsgr.com
aknutson@wsgr.com

Stephen E. Noona
Mark E. Warmbier
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
mewarmbier@kaufcan.com

*Attorneys for Plaintiff iControl Networks, Inc.*

                                                /s/
                               Dabney J. Carr, IV, VSB #28679
                               Robert A. Angle, VSB #37691
                               **TROUTMAN SANDERS LLP**
                               P. O. Box 1122
                               Richmond, Virginia 23218-1122
                               Telephone: (804) 697-1200
                               Facsimile: (804) 697-1339
                               dabney.carr@troutmansanders.com
                               robert.angle@troutmansanders.com
                               *Counsel for Defendant Alarm.com Incorporated*